Good morning, Your Honors. May I please look forward? My name is Attorney Geetha Kapoor. I'm here appearing on behalf of Petitioner Leticia Osegueda De Alfaro. I would like to reserve three minutes for rebuttal. As you are aware, this case involves the agency's decision affirming the denial of the petitioner's motion to reopen and administratively close the removal proceeding so she may pursue a provisional unlawful presence waiver, which is for alien who must travel abroad to obtain immigrant visa from the Department of the State. Has there been an attempt to mediate this case? Several times, Your Honor. After the I-130 was approved, we reached out to the Assistant Chief Counsel and tried to seek prosecutorial discretion two times because the case was not being transferred to National Visa Center in order to complete the adjudication of counselor processing and do the regular 601 waiver. After the I-130 was approved, they still didn't transfer for a very long time the petition to NBC. We also sought to administratively close the case on the day when the petitioner took the pre-conclusion voluntary departure order. I did talk to several people in the Chief Counsel's office, but that request was denied. After the petitioner did the pre-conclusion voluntary departure in December 2012, we sought joint motion to reopen. At that time, we did not seek it based on provisional waiver as it had not become the law in effect. There was a medical condition with the child, which the petitioner notified us she had recently learned the severity of the condition. The condition existed in May 2012, but the condition became worse sometime between October to the time she came to my office after November 2012. I'm basically just wondering whether if we sent this case to mediation now, there would be any hope of an agreement. We did reach out to OIL while this case has been pending, and we were told that prosecutorial discretion was denied. I'm not sure because at the time when we had reached out, the case was before IJ. She was not an enforcement priority. She's been in the United States over 15 years. No criminal history. USC husband, United States citizen children, LPR mother, mother-in-law, a USC brother. I have no idea why the prosecutorial discretion was declined at that point, Your Honor. Has anything changed? Does she have a criminal record now? No, Your Honor, she doesn't. The child did have a severe medical problem. The child was diagnosed with polygyrocephaly, which is flattening of one side of the skull. He had to be on a special helmet that had to be supervised by a clinical specialist. If not supervised, it could result in serious skin infections. And he had developmental delay. He was seeking physical therapy, occupational therapy. Had an abnormal ultrasound related to his kidneys. Had reactive airway disease.  With respect to the BIA decision, we believe the case should be reversed and remanded to the BIA because the BIA decision was arbitrary and contrary to the law. First, we believe the BIA holding was arbitrary to the law because in affirming the denial of motion to reopen, the BIA also affirmed the IJ's determination that petitioner did not want reopening as a matter of discretion. However, there was no reason explanation provided. There was no analysis of any relevant factors weighing up equities. Cursory summary and conclusionary statements are inadequate. Moreover, the court can only affirm the BIA's denial of the relief on the basis articulated in the decision. The court cannot assume the BIA considered factors that it failed to mention. Second, we believe the BIA decision was contrary to the law. The BIA held that the petitioner is not eligible for provisional waiver because she has a final order of removal and the waiver was not expanded to include individuals with final order of removal under 8 CFR 212.7E46. As stated in Dada v. Mukasey, the purpose of motion to reopen is to ensure proper and lawful disposition. Although motions to reopen are disfavored, they also constitute an important safeguard of alien rights. In essence, by petitioner exercising her statutory right to file a motion to reopen under 8 CFR 1003.2C1, the agency is arguing the petitioner made herself ineligible for provisional waiver. However, this relief was not previously available to the petitioner at the time she sought pre-conclusory voluntary departure. She had no relief of any sort. Obviously, the regulations for provisional waiver and the statutory right to file a motion to reopen contradict each other. However, two regulations can coexist as stated in Dada v. Mukasey. This court in Lopez Ruiz v. Ashcroft held that upon grant of the motion to reopen, there is no longer a final order of deportation. Can you address the government's argument from the previous case that even if there was reopening, so there was no final order of removal, she would still be in removal proceedings and therefore would be barred? Is your argument there that you'd seek administrative closure? Can you address that point? Your Honor, for that, the solution would be to seek administrative closure. And matter of petition does provide a guideline, a standard, when the court should exercise its discretion in granting a motion to administratively close her. The fact that the government might oppose it should not be given weight if it doesn't really have any reasoned explanation just because they oppose it, period. And in this case, my client doesn't have any criminal history. She has a child with serious medical problems. She could show the extreme hardship. She's over 17 years old. She has an approved I-130 petition. She's willing to leave to obtain her immigrant visa. There's no other bar that would make her ineligible for provisional waiver. And I believe, like stated by the Supreme Court in Dada v. McKenzie, we have to protect the alien right to exercise a motion to reopen. That should not be frustrated by the fact that she had taken pre-conclusion voluntary departure and now she became eligible for some relief that she wasn't available before. And therefore, by virtue of that, she made herself ineligible for final order under 8 CFR 1240.26B33. And also, I believe the BIA is incorrect in stating that there is no provisions in the regulations that allow the BIA to reopen petitioner case. As per Singh v. Holden, 8 CFR section 1003.28, the board may open at any time on this motion any case in which it has rendered a decision. The board may also reopen proceeding under 8 CFR 1003.271 provided the motion is filed within the 90 days of final order to afford an alien opportunity to apply for discretionary form of relief. Our case is like the petitioner's case in Kululu and Singh v. Holden because in both of the cases, BIA said they didn't have a jurisdiction to allow to reopen a case. Here too, the BIA stated, also the BIA stated, we could seek out prosecutorial discretion, which we had stated on record, it has been denied repeatedly. Humanitarian reinstatement would not cure her final order of deportation, nor would stay of deportation by ICE would cure that, nor those mechanisms are subject to judicial review. So those are some important things that should be taken into consideration. Also, Your Honor, I do believe that the BIA didn't even provide, did not even address matter of a petition at all. And at this point, I would be happy to answer any questions. Or you can save the time you have left. Okay. Thank you. Thank you. Good morning, Your Honors. Attorney Sabatino F. Leo on behalf of the United States Attorney General. The simple terms of this case are that the board did not abuse its discretion when it denied petitioner's motion to reopen. Petitioner- Did the board know it had discretion? Yes, it did, and the board- How do we tell that from its decision? If you read the board's decision in its entirety, it states unequivocally that it had the discretion to consider the motion to reopen, chose to deny the motion to reopen as a matter of discretion, specifically because petitioner with a final order of removal as set forth in the regulation is ineligible for the relief she requested. The burden is on petitioner with regard to the filings of motions to reopen. And this court has consistently held that petitioner bears the burden of establishing new evidence that is also material, materiality being defined as evidence likely to change the result of this case. And as was discussed in the prior argument, is that petitioner is statutorily, regulatorily ineligible for the relief she sought. But if she got reopening- Yes, Your Honor. Then she wouldn't have a final order of removal, then she could seek administrative closure, and then she would be eligible, and she seems like a pretty good candidate, doesn't she? Your Honor, as is replete in the record, and as I would say, it actually is conceded by petitioner in her brief and in her argument to this court, the agency has consistently considered this case for prosecutorial discretion, administrative closure, and chose not to exercise its discretion. And that's an important note for this court as well, is that this, as indicated in our brief, Hector v. Cheney talks about executive discretion. Administrative closure, prosecutorial discretion, lies within the discretion of the executive agency. And the executive agency decided not, has consistently decided not to exercise discretion in this case. I would even add that INA 242G talks about discretion, discretion, and that this court doesn't have jurisdiction over the discretionary, those discretionary determinations by the agency, and that, albeit that I recognize Your Honor's concerns, and I am not here to beat about the facts with regard to the equities involved in this particular case, but the actual issue in this particular matter, Your Honor, is clear, whether or not the board abused its discretion. Well, so I read the decision as mentioning discretion in connection with the IJ, but then, you know, the petitioner appealed to the BIA, and in all of the discussion of what the BIA was going to do with this appeal to it, I don't see any indication that the BIA actually understood that there was discretion to reopen. Well, I mean, I think there's two answers to your question. I think the first answer to your question is it's affirming the immigration judge's decision. Immigration talks quite substantially, significantly about the discretion to reopen, as well as the opportunities that petitioner had with regard to administrative closure and prosecutorial discretion. And I think the BIA elaborates on that decision and says, specifically in its final paragraph, that says she already has a final order of removal, and the waiver process was not expanded to include aliens with final orders. But if they reopened, she wouldn't have one. I mean, there is some circularity here, right? So if the BIA has discretion to reopen and they reopen, she won't have a final order of removal anymore. And so why don't they have to at least consider the equities and consider whether to exercise their discretion? Your Honor, it's Respondent's position, and I think it's evidence in the brief and evidence in the record, is that in order for the agency to reopen a case, there has to be some semblance of will these new facts change the result? And this Court has consistently held that the Board need not write an exegesis, it need not write a full panoply, a 15-page decision with regard to what it considered and what it did not consider. But it doesn't say anything other than that having a final order of removal bars her, but she wouldn't have one. I mean, that sort of begs the question if the question was whether they should eliminate that final order of removal. Your Honor, but even if she had, even if we were, even if I were to say that they reopened, that they would reopen this particular case, as has been discussed previously and as is specifically in the regulation, she still is in removal proceedings. And as is replete in this record, as well as the immigration judge's identification of same, it's not speculation like we had in the prior case. This is actual fact replete in the record. As Petitioner concedes that she was consistently denied prosecutorial discretion, administrative closure. As a result, she has no relief available to her. As a result, this motion to reopen did not introduce new evidence. So are you saying that the same reasons that she was denied prosecutorial discretion are the same reasons she would be denied the 601A waiver and we can tell that for sure? Is that what you're saying? I don't understand the question. If I may and if I do incorrectly, please, ma'am, Your Honor, please let me know. Our position is this. She is ineligible for a waiver regulatorily. She doesn't even get on the, quote, unquote, floor with regard to the I-601A waiver because she is statutorily ineligible. So all these equities that were replete in the record are really irrelevant in this particular case because she cannot get an I-601A provisional unlawful presence waiver. Because she has a final order of removal? Yes. So, I mean, it seems like the government's position is no one ever with a final order of removal will ever be able to get a 601A waiver. Provisional unlawful presence waiver, that's not what the agency is saying, Your Honor. That is what Congress is saying. Well, it's what the regulation said, right? It is. And we had a notice and comment period with regard to applicability of this I-601A waiver with regard to those with final orders of removal. Congress took that into consideration, looked at it and said, you know what? We're really trying to do our best to help aliens here, and I think that's why we can't be lost on this particular regulation. But we also have a regulation, 8 CFR 1003.2A, that says the board can always reopen in its discretion, right? So we've got one regulation that says administrative closure is a bar. The other one says we can reopen if we want to. And if they reopen, she'll no longer – sorry, not administrative closure, but a final order of removal. If they reopen, that's going to be gone. And so we have both these regulations. Your Honor, it is with the board can reopen a case under its sua sponte authority to reopen a case. Understood? Which is, again, I would argue is beyond the jurisdiction of this Court whether or not the board decides to sua sponte reopen. But taking that further, what I'm saying is the regulation as enacted says if you have a final order of removal, you do not – you cannot receive an I-601A provisional lawful presence waiver. It doesn't prevent her from pursuing an I-601 waiver, which is leave the country, apply for the 212 waiver as we discussed – as was discussed previously, and go ahead in those terms with regard to the waiver. She still has relief available to her with – in that regard. It's – again, it's just a process that's a little bit longer. But what I would ask Your Honor to consider is what Congress really did a really good job here, is what they're trying to do is really help aliens in this particular case in saying in light of this situation, individuals that are here and have a potential for an I-601 waiver, let's shorten the time frame. Let's relieve that anxiety of them going over and coming back. But let's do so only in these limited circumstances. And these limited circumstances, as Your Honor identified, were discussed in the preamble and are set forth specifically in the regulation with respect to if you have a final order of removal, it gets a little bit more complicated. Therefore, this – But for reasons that don't seem to apply to her, so I just really don't understand. I mean – so maybe let me ask you. Is there any chance if we send this to mediation now this case will mediate? I can say with all honesty, Your Honor, no. And I can say – and I can say that as evidence in the record and as evidence that this Court reviews is that there is simply not an avenue for this particular alien to receive discretionary relief in the form of administrative closure from the agency in this particular regard. And – but again, I think we need to step back a moment and say, really, what are we analyzing here? We're analyzing whether or not the Board acted arbitrarily, capriciously, contrary to law. And it would be contrary to law for them to not understand they had discretion in a situation where they have discretion, correct? They understood that they had the discretion. And with regard, if you're reading the agency decisions in their entirety, as this Court has said time and time again, we read the Board's decision as well as the immigration decision to the effect that it has affirmed that decision. It's in entirety. And you can see clearly, even the immigration judge talks about prosecutorial discretion, administrative closure has gone back and forth. And as a result of that, in light of that, we're going to exercise our discretion as the agency and deny this motion to reopen because, in effect, petitioner is statutorily, regulatory, ineligible for a I-601A unlawful presence waiver for purposes of waiving her inadmissibility. In 2001, we have a petition that in 2001 entered without inspection. As a result of that entry without inspection, Your Honor, there are consequences to those actions. And although there are a number of equities that have amassed during that period of time, there remain consequences as a result of that action. And I don't sit here as an officer of this Court and say, stop, full stop, no, not getting an I-601 unlawful presence waiver. What I'm saying is, as Congress has dictated, she is not entitled to an I-601A provisional unlawful presence waiver. Again, it's the regulation, not Congress, right? Understood. It's the regulation. I understand it's the regulation. It's the regulation that stands upon INA 212 and kind of defines it for this Court to kind of understand what it, to understand kind of what Congress, what was being discussed in that particular sense. I keep saying Congress, and I apologize for that, Your Honor. But I do want to add just a number of, a few points. Dada, the case Dada v. Mukasey and its progeny are inapplicable here. The Court in our position, this is not a situation where we're saying you don't have a statutory right to reopen your case, which is Dada and its progeny says, and Dada and its progeny talks about the absolute right to file a statutory motion to reopen timely within 90 days of the decision. You have that right. You can't usurp that right, right? That right cannot be usurped. She had the ability to file her motion to reopen. That motion to reopen was simply denied by the agency, in our opinion, as a matter of discretion as their right to do. So this whole idea that we're relying on Dada and its progeny with regard to statutory rights to reopen, I think misses the mark with respect to this particular case and this particular argument. This motion to reopen was ruled on by the agency. No one said there's nothing in either decision that says you do not have a right to file a motion to reopen. You did, and in this particular case, you lose. But we, it seems like we may have a disagreement over how to read whether the agency understood there was discretion. But don't Singh and Kalihu say that if the agency misunderstood whether it had discretion, that is a legal error? Well, and I think what's important about Kalihu and Singh, what they state specifically is that the agency went about denying the motion to reopen on jurisdictional grounds. And even if you look at the last paragraph in Singh, it says we're not saying whether or not you're going to allow this motion to reopen. You have to at least consider it. But the point is if the agency doesn't understand that it has the ability to consider something, that's a legal error, right? If it does not understand it has the ability to consider something. And it does have the ability. If the law allows the agency to have a choice and it doesn't understand that it has the choice, that's a legal error. Yes, Your Honor. I understand that. In this particular circumstance, this situation. You don't think they misunderstood. But if they had misunderstood the existence of a choice, that's a legal error. But I would say that if you read the immigration judge's decision and the board's decision together, I think that all those issues are pretty much handled. The boxes are really checked in this case. And this circuit is consistently held that we need not, that the agency is not required to write on and on and on about what decision it made. What it does have to do is recognize it applied the law to the facts and it did so. In our opinion, in this particular case, when you read those decisions in their entirety, Your Honors. And in this particular case, I think we have to hearken back to really what happened here. We have a petitioner who filed a motion to reopen. Petitioner bore the burden of setting forth material evidence, materiality being defined by this court as evidence that would likely change the result. And this particular, and the agency reviewed what was provided by petitioner in this particular case. And what petitioner, and what it came to the conclusion of is, as a result of the regulation, you are ineligible for an I-601A unlawful, provisional unlawful presence waiver. And the respondent, it's respondent's position that that is not arbitrary, capricious, contrary to the law. And as a result of the petition for review, Your Honors, in our opinion, should really be denied in this particular case. And I think we need to really see what the, to flesh out what the issue is here with regard to this. And I understand the equities, but I think if we hearken down on really what the question of law is here, we remain. And if there are no further questions by Your Honors, I thank Your Honors for your time. Thank you. Thank you.   Thank you. Thank you. Thank you. I believe the crooks of the case is whether the petitioner had a statutory right to file a motion to reopen or not, to take advantage of this new law that came, that was going to come into effect on March 4, 2013, and I believe that is the issue in this case. And by denying the petitioner's motion to reopen, which she had timely filed within 90 days, they essentially penalized her for exercising her statutory right. The BIA decision— If she hadn't filed to reopen, though, she still would have been in removal proceedings, so she still would have been ineligible? She wouldn't have been able to stay in the United States, Your Honor. Her voluntary departure period was going to expire on March 7. The law came into effect on March 4. The final rule was published on January 3, 2013. So she would not have been here to take her biometric, which is one of the requirements for her to pursue provisional waiver. She would not have been able to stay to complete the adjudication of the I-601 waiver. It would have defeated the purpose if she would have departed, and the regular rule— And so I'm just trying to figure out—I mean, the idea that she caused her own problem by seeking reopening, I'm not sure that's really right. It seems like she had a problem anyway, and maybe I'm misunderstanding. Your Honor, she had to apply for the waiver, the regular waiver, outside the United States. That waiver could take from six months to two years, and that's based on the experience that our office has had. So she was waiting prolonged separation from her husband and a sick child. So she had choice to wait outside six months to two years or take advantage of this new law that came into effect and wait the adjudication of that I-601 waiver while she was in the United States. Right, so my point is just if she hadn't filed the motion to reopen, she still wouldn't have gotten the 601A waiver. It's not the motion to reopen—I mean, the motion to reopen causes this other problem that we're now talking about here, but it's not like if she had not filed that, she would have gotten a 601A waiver the next day. No, she wouldn't have. She wouldn't have been able to complete it. She wouldn't have been able to do the biometrics. And if she hadn't taken voluntary departure, she would have been subject to a final order of removal months before. Yes, Your Honor, and then she would need the additional waiver. So she hasn't been penalized by this. I don't understand your argument that somehow she's been penalized by this process. She got some favorable treatment that she's hoping to expand, but the reality is that she's never had lawful status and would have been subject to a final order of removal upon the conclusion of the initial proceeding, except she obtained voluntary departure. Your Honor, that is correct. However, what I'm trying to say is that the petitioner would have not been able to take the immigration judgment. He denied the motion to reopen. He stated the reason he's denying the motion to reopen is because the petitioner took a deal by waiving all rights to appeal, and she's not supposed to have done a motion to reopen. It was a part of his decision, in fact, stating that. And that is in contradiction to what DADA v. Mukasey stands for, which basically said that we have to safeguard the alien's right to file a motion to reopen. And we have to look at the law as a whole. As the Court recognized, there is some conflict, some tension, between the regulations with respect to 8 CFR 1003.2C and 1003.2A and the regulations for the provisional waiver. How do we resolve that tension by looking at the law as a whole? And what is the law as a whole? I mean, the IJ is explicit in discussing this as a matter of discretion. Is there anything that precludes considering as part of the exercise of discretion the fact that this matter has been pending for a long time, that a previous resolution was reached, now maybe circumstances have changed and your client doesn't want to honor the previous agreement? Why can't the IJ take that into account in deciding whether or not to exercise discretion? He can, Your Honor, but he also had to take the positive factors. Well, but there's nothing that tells us that he knew the positive factors were there. He heard from your client and decides, you know, when we were under a decision, we don't talk about all the arguments that in the end didn't have any traction. We talk about what it was that finally tipped the balance. And that's how I read his decision. And you've acknowledged that it's not an improper ground for decision. So what is it that we are in a position to review? Your Honor, with respect to the judge, looking at a negative factor is a proper finding, but the judge also has to look at positive factors. And I don't believe his decision really looks at positive and negative. We cannot assume that he considered her positive factors. Why not? He doesn't mention how he thought or assumed. So what? We don't mention everything that's argued to us either. And that doesn't mean the public is supposed to assume that we only paid attention to the specifics that we talked about. And we've got clear law that says that the BIA and the agency doesn't have to discuss every issue, doesn't have to go through all the evidence. Your Honor, due process requires a certain minimum degree of clarity and the treatment of properly raised arguments. In this case, I believe the judge did need to show that he considered the positive and negative factors. He also cited a case law, which is actually not a good case law to an extent. It has been overruled by a matter of avertision. The judge relied on a matter of deterrence. He cites to Interim Decision 3135, a matter of Lopez Barrio, which states that administrative closing procedure may not be used if it is opposed by either parties to the proceedings. That case is not, to the extent that it states that, it holds that, it is not a good law. Because it relies on a matter of deterrence and a matter of avertision, overruled it. It also relies on another case where it says strict compliance with the joint motion to reopen is not required when the DHS has not objected that the alien failed to submit an application for relief in the motion to reopen. I believe his decision doesn't take into considered data versus McCarthy. It doesn't provide reasoned explanation, Your Honor. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Fernandez, Clifton, Friedland